UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUIPEMENTS DE TRANSFORMATION
IMAC,

        Plaintiff,

v.

        Case Number 07-13306
        Honorable David M. Lawson

ANHEUSER-BUSCH COMPANIES, INC. and
ANHEUSER-BUSCH, INC.,

        Defendants.

_____/

## OPINION AND ORDER GRANTING MOTION TO STAY PROCEEDINGS AND DENYING EMERGENCY MOTION TO STAY DISCOVERY ORDER

This matter is before the Court on the defendants' motion to stay this case pending reexamination of the subject patent by the United States Patent and Trademark Office (PTO). Plaintiff Equipements de Transformation IMAC (Equipements), a Canadian corporation, has brought suit against defendants Anheuser-Busch Companies, Inc. and Anheuser-Busch, Inc. (collectively, Anheuser-Busch) for infringement of United States Patent No. 6,852,191 (the '191 Patent), which describes a method and apparatus for making adhesive-backed labels that are applied to various products, including beer bottles. The defendants ask the Court to stay the action on the grounds that proceedings before the PTO cast serious doubt on the validity of the patent in suit and, regardless of the outcome, judicial economy favors a stay pending those proceedings. Since this motion was filed, the magistrate judge issued an order compelling discovery, and the defendants have moved on an emergent basis to stay that order as well. The plaintiff opposes the motion for a stay pending PTO proceedings, contending that there is no statutory authority for a stay and taking such action would result in substantial delay and prejudice. The plaintiff is correct that no statute authorizes

anyone other than the patent owner to seek a stay during *inter partes* reexamination by the PTO. However, the Court has inherent power to stay the proceedings, and the controlling factors favor a stay in this case. Therefore, the Court will grant the motion to stay proceedings in the entire case and deny the emergency motion to stay discovery as moot.

I.

On February 8, 2005, the '191 Patent was issued to the plaintiff as the assignee of inventors Francois Bayzelon, Frédéric La Brie, and Daniel Brochu. The '191 Patent describes a method and apparatus for creating pressure-sensitive labels, probably of the transparent variety, although neither the Patent nor the record is clear on that point. Equipements manufactures and sells the apparatuses to companies that produce labels. Anheuser-Busch sells products that display similar labels, which are manufactured in part by FLEXcon Corporation, a company based in Spencer, Massachusetts. However, Anheuser-Busch itself neither makes the labels nor the equipment used to produce them.

On August 8, 2007, the plaintiff filed its complaint in this Court against Anheuser-Busch for patent infringement. The theory is straightforward: Anheuser-Busch has, since 2006, "sold beer in bottles bearing labels made by a process covered by one or more claims of the '191 patent without right, authority or license." Amend. Compl. at ¶ 8. Bud Light and Budweiser Select apparently have been distributed in containers stamped with these labels, although the original product (The King of Beers) remains pure and untainted. In its complaint, the plaintiff suggests that FLEXcon is "controlled" or "wholly owned" by Anheuser-Busch. In its motion response, however, the plaintiff seems to have retreated from that assertion, but it still has questions regarding the "legal relationship between Defendants and FLEXcon." Resp. Br. at 5. The plaintiff seeks injunctive relief and treble damages for willful infringement.

Anheuser-Busch answered the complaint on October 15, 2007. In addition to denying the allegations of infringement, Anheuser-Busch asserted that the plaintiff failed to state a claim; the Court lacks personal jurisdiction; venue is improper; the '191 Patent is invalid or unenforceable; the plaintiff is estopped from claiming infringement "[b]y reason of the prior art and/or statements" made to the PTO, Ans. at ¶ 4; the action is barred by laches; and any damages suffered by the plaintiff were the product of its own doing. Anheuser-Busch also asserted counterclaims seeking declaratory judgments of invalidity and non-infringement.

On October 12, 2007, just three days before Anheuser-Busch filed its answer, non-party FLEXcon filed a request for *inter partes* reexamination of the '191 Patent. *Inter partes* reexamination (which is to be distinguished from *ex parte* reexamination) is a statutorily-authorized procedure by which any interested party may request the PTO to review its decision to issue a patent in light of prior art. *See* 35 U.S.C. § 311. "Although proceedings before the PTO ordinarily are *ex parte*, in the late 1970's the regulations governing PTO reissue proceedings were amended by the so-called 'Dann amendments' to allow *inter partes* protestor participation. *See generally PIC, Inc. v. Prescon Corp.*, 485 F. Supp. 1302, 1303-05 (D. Del. 1980); *see also* 47 Fed. Reg. 21, 749 (1982). The purpose of these amendments was to economize the time and expense for both the courts and the litigants." *PPG Indus., Inc. v. Celanese Polymer Specialities Co., Inc.*, 840 F.2d 1565, 1568 (Fed. Cir. 1988). However, the Dann amendments were generally seen as ineffective, *ibid.*, so new provisions appeared in the Intellectual Property and Communications Omnibus Reform Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501 A-521 (codified at 35 U.S.C § 311, *et seq.*). Under the new regime,

> [*i*]*nter partes* reexamination can be initiated by "any person." The process begins with the requester filing a citation of prior art under section 301. Thereafter, in the

case of *inter partes* reexamination, the requestor files a written request under section 311. As in the case of *ex parte* reexamination, the Director of the Patent and Trademark Office determines after receiving a request under section 311 whether the request sets forth a "substantial new question of patentability." Where such a question is found to exist, the Director issues an order instituting *inter partes* reexamination. *Inter partes* reexamination is be conducted, as a general matter, "according to the procedures established for initial examination under the provisions of sections 132 and 133." The claims of the patent undergoing *inter partes* reexamination can be amended so as to be narrower, but no broadening is allowed. At the conclusion of *inter partes* reexamination a certificate is issued that states the outcome of the proceeding.

5 Moy's Walker on Patents § 16:66 (4th ed.) (footnotes omitted) (citing 35 U.S.C. §§ 311, 312, 313, 314, 316).

As noted earlier, a common basis for seeking *inter partes* reexamination is the existence of undisclosed prior art. *See, e.g., Tomco Equip. Co. v. Southeastern Agri-Systems, Inc.*, 542 F. Supp. 2d 1303 (N.D. Ga. 2008); *Callaway Golf Co. v. Acushnet Co.*, 523 F. Supp. 2d 388 (D. Del. 2007); *Cooper Tech. Co. v. Duda*, 247 F.R.D. 510 (E.D. Va. 2007); *Pieczenik v. Cambridge Antibody Tech. Group*, 2004 WL 1118500 (S.D.N.Y. May 14, 2004). "Any person at any time may cite to the Office in writing prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent." 35 U.S.C. § 301. Under 35 U.S.C. § 311(b)(2), "[t]he request [for *inter partes* review] shall . . . set forth the pertinency and manner of applying cited prior art to every claim for which reexamination is requested." The PTO's final decision following *inter partes* reexamination is binding as to the party requesting reexamination, *see* 35 U.S.C. § 315(c) ("A third-party requester whose request for an inter partes reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised

or could have raised during the inter partes reexamination proceedings [except as to] . . . newly discovered prior art unavailable to the third-party requester and the Patent and Trademark Office at the time of the inter partes reexamination proceedings."); *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007); *Tomco*, 542 F. Supp. 2d at 1306; *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 2007 WL 2990152, *1 (N.D. Cal. Oct. 11, 2007). On the other hand, if the PTO determines through *inter partes* reexamination that a formerly-issued patent is no longer valid, parallel litigation in the district court could be altered dramatically because the patentee suing for infringement would no longer have a patent on which to sue.

Citing fifteen pieces of prior art that allegedly "raise[] substantial new issues of patentability," FLEXcon's request for reexamination challenged all thirty-three of the claims contained in the '191 Patent. *See* Mot. for Stay, Ex. A, Request for Reexam. According to Anheuser-Busch, the request for reexamination "demonstrates . . . that a key element relied upon by E[quipements] to obtain the patent – use of a second 'chill roll' after lamination in the label making process – was in fact taught by numerous prior patents and printed publications, and therefore is not valid grounds for patentability." Br. in Supp. at 6.

The same day Anheuser-Busch filed its answer it filed the present motion to stay litigation pending reexamination before the PTO. After the plaintiff responded and Anheuser-Busch replied, Anheuser-Busch filed a supplemental brief informing the Court that the PTO granted FLEXcon's request for *inter partes* reexamination. The Court held a conference with the parties on February 1, 2008 to attempt to craft an order providing limited discovery until an estimate could be made of the time the reexamination process might last. That effort proved fruitless after the parties failed to reach an accord about the scope of discovery.

Meanwhile, the PTO granted the request for *inter partes* reexamination on February 22, 2008, determining that a "substantial new question of patentability affecting claims 1 and 12 of United States Patent Number 6,852,191 . . . is raised." First Supp. Br., Ex. A, PTO Order Granting Reexam. Request at 6. The PTO also decided to reexamine claims 31-33.

On March 10, 2008, Anheuser-Busch filed an updated report to inform the Court that on February 29, 2008, the PTO issued its opinion rejecting certain claims following reexamination. The PTO rejected claims 1, 12, 31, 32, and 33 under 35 U.S.C. § 103(a) as being unpatentable due to prior art. Those claims appear to be critical to the overall invention, reading as follows:

> **1.** A method for manufacturing a product comprising the steps of:
> feeding a continuous web of release paper to a lamination workstation;
> applying adhesive to the release paper at an adhesive application workstation prior to entering the lamination workstation; and
> laminating a continuous strip of face stock to the release paper with the applied adhesive in a continuous single pass cycle at the lamination workstation;
> contacting the release paper downstream of the adhesive application step with a first cooling roller having an internal passage for receiving a continuous stream of coolant thereby to cool the release paper;
> pressing the face stock and the release paper between the first cooling roller and a pressure roller to laminate the face stock and release paper together; and
> contacting the lamination with a second cooling roller having an internal passage for receiving a continuous stream of coolant downstream of the lamination step for the purpose of cooling the face stock lamination.
> . . .
> **12.** An apparatus for manufacturing a product comprising:
> means for feeding a continuous web of release paper to a lamination workstation;
> means for applying adhesive to the release paper at an adhesive application workstation prior to entering the lamination workstation;
> means for laminating a continuous strip of face stock to the release paper with the applied adhesive in a continuous single pass cycle at the lamination workstation;
> wherein the apparatus further comprises a first cooling roller having an internal passage for receiving a continuous stream of coolant and being located downstream of the adhesive application workstation for cooling the release paper, a pressure roller for pressing the face stock and the release paper together for lamination as the face stock and release paper move between the first cooling roller and the pressure roller to create a face stock lamination; and

> a second cooling roller having an internal passage for receiving a continuous stream of coolant, the second roller being located downstream of the lamination workstation for cooling the face stock lamination.
> . . .
> **31.** The apparatus of claim **12**, wherein the adhesive applying means further comprises:
> a slot die located upstream of the lamination workstation.
> **32.** The apparatus of claim **12**, wherein the adhesive is hot melt adhesive.
> **33.** The apparatus of claim **12**, wherein the cooling means further comprises:
> a cooling workstation located downstream of the adhesive application workstation including a pump for pumping a continuous stream of coolant through the first and second rollers and a heat exchanger for removing heat from the coolant after passing through the rollers.

Compl., Ex. A, '191 Patent at columns 9-10, 12.

Pursuant to 37 C.F.R. § 1.945, the plaintiff had until April 29, 2008 to respond to the PTO's decision. Initial PTO Decision at 3. FLEXcon then would have thirty days thereafter to comment. *Ibid.* (citing 35 U.S.C. § 314(b)(2) and 37 C.F.R. § 1.947). According to the plaintiff, it has "responded to the . . . rejection of claims, vigorously arguing the patentability of the originally claimed invention." Pl.'s Reply re Mot. to Comp. Disc. at 6. It is unclear whether FLEXcon has commented. The PTO has stated that, once it passes on these arguments, it intends to issue "an Action Closing Prosecution" (i.e., a final decision). Initial PTO Decision at 3. At that point, however, either the plaintiff or FLEXcon may appeal to the Board of Patent Appeals and Interferences and, beyond that, to the United States Court of Appeals for the Federal Circuit. *See* 35 U.S.C. §§ 315, 134, 141; *Cooper Tech. Co.*, 247 F.R.D. at 512 n.1.

II.

As a preliminary matter, the plaintiff contends that the Court has no power to stay these proceedings at the request on the defendants because of want of statutory authority. Section 318 of Title 35 authorizes a stay of litigation pending *inter partes* reexamination at the request of the patentee. The statute provides:

> Once an order for inter partes reexamination of a patent has been issued under section 313, *the patent owner* may obtain a stay of any pending litigation which involves an issue of patentability of any claims of the patent which are the subject of the inter partes reexamination order, unless the court before which such litigation is pending determines that a stay would not serve the interests of justice.

35 U.S.C. § 318 (emphasis added). The plaintiff argues that the limitation in the statute to patent owners implies an intent by Congress to preclude others from seeking such a stay. However, the statute notwithstanding, it is well established that courts also have inherent power to issue stays pending reexamination. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1996) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *Pass & Seymour, Inc. v. Hubbell, Inc.*, 532 F. Supp. 2d 418, 435 (N.D.N.Y. 2007); *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007); *see also Emerson Elec. Co. v. Davoil, Inc.*, 88 F.3d 1051, 1054 (Fed. Cir. 1996).

The plaintiff argues that recognizing inherent authority to issue a stay is unwise in light of the limited nature of the statutory stay provision. The Northern District of California rejected this very argument in 2007:

> In granting defendant's motion for a stay, the court rejects plaintiff's contention that 35 U.S.C. § 318 limits the right to request a stay to the patent owner alone. Although true that § 318 does not expressly provide for an automatic stay of parallel district court proceedings, the statute in no way impacts the inherent powers of the court to

> control the litigation before it, and to grant a stay in the interests of justice when so required. *See also* Middleton [*v. Minnesota Manufcturing and Mining Company*], 2004 WL 1968669 at * 2 [(S.D. Iowa 2004)] (disregarding similar objections based on 35 U.S.C. § 318 in view of the court's "inherent discretionary power to issue a stay").

*Proctor & Gamble*, 2007 WL 2990152 at *1. the Court agrees with this rationale and adopts it. Section 318 does not displace this Court's inherent power to issue a stay that is so well grounded in decisional law.

### III.

The defendants ask the Court to stay proceedings in this forum pending the reexamination process, contending that a stay is likely to simplify or moot certain issues, rendering the litigation in this Court more efficient. The plaintiff's response opposing a stay is based largely on the speculative propositions that proceeding in this forum would be much quicker, and that Anheuser-Busch and FLEXcon may use a "tag-team" strategy to protract reexamination for a substantial period of time, using the time bought to continue to infringe the plaintiff's patent rights.

"When considering whether to stay patent infringement litigation pending a reexamination of the patent in suit, courts generally examine three factors, including '(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Pass & Seymour*, 532 F. Supp. 2d at 435 (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406-07 (W.D.N.Y. 1999)). *Accord Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 582 n.26 (D. Del. 2007); *Anascape, Ltd.*, 475 F. Supp. 2d at 615; *Medicis Pharmaceutical Corp. v. Upsher-Smith Laboratories, Inc.*, 486 F. Supp. 2d 990, 993-94 (D. Ariz. 2007); *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111

(N.D. Cal. 2006); *Gonnoci Revocable Living Trust v. Three M Tool & Mach., Inc.*, 8 U.S.P.Q.2d 1755, 1757 (E.D. Mich. Oct. 7, 2003). Many courts have recognized that "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . . proceedings." *See, e.g., Medicis Pharmaceutical Corp.*, 486 F. Supp. 2d at 993 (internal quotation omitted).

The relevant factors favor a stay in this case. The first factor weighs in favor of a stay because the plaintiff's claim of tactical disadvantage is based on mere speculation. The plaintiff claims that reexamination proceedings could last three to four years because Anheuser-Busch and FLEXcon may employ a tag-team strategy by making successive requests for *inter partes* reexamination. There are a pair of problems with this argument. First, Anheuser-Bush has disclaimed ownership or control of FLEXcon, and nothing in the record supports the idea that FLEXcon is anything other than an independent supplier to Anheuser-Busch. Since there is no other evidence of a close relationship, the suggestion that these entities may be colluding is mere speculation. Second, and more importantly, the tag-team strategy envisioned by the plaintiff makes little practical sense. The plaintiff seems to imagine FLEXcon making only some arguments for invalidity in the reexamination process, leaving others for Anheuser-Busch to make in the future, thereby extending the proceedings before the PTO. The reason this argument strains credulity is that FLEXcon obviously has much to lose in all this (if the plaintiff is right, FLEXcon is using patented technology without license), so it only makes sense that it would present all colorable arguments to the PTO in the first instance. Absent evidence to the contrary, it is simply unreasonable to assume a delay scheme predicated on intentionally withholding arguments and references to prior art. Further, the plaintiff has not shown prejudice. The plaintiff's argument that it would suffer prejudice

in the form of delay is unavailing because (1) it has a fair degree of control over how long the reexamination process takes, and (2) the PTO has proceeded expeditiously thus far. Moreover, the fact that the plaintiff did not request preliminary injunctive relief cuts against any argument that it is faced with emergent circumstances.

The second factor – whether a stay will simplify the issues in question and trial of the case – is also important. Courts routinely issue stays in infringement cases pending reexamination for the very reason that the infringement action can become moot or, at the very least, narrowed significantly. *See, e.g., Pass & Seymour*, 532 F. Supp. 2d at 436 (staying proceedings based on "finding that the parties and the court could benefit immensely from the expertise of the PTO, and that its determination could potentially avoid the necessity of this case going forward, or at a minimum materially reshape the issues presented"); *Anascape*, 475 F. Supp. 2d at 617 ("[T]his court finds that the possibility of simplification of issues resulting from reexamination weigh in favor of granting stays as to the '791, '205 and '415 patents."). Here, the PTO has already expressed its opinion that five claims are invalid. Although it is unclear precisely how critical these claims are to the '191 Patent, they likely are material; the patent may well fail without them. Certainly, the validity of the plaintiff's infringement action is cast into some doubt by the reexamination proceedings.

Analysis of the third factor – whether discovery is complete and whether a trial date has been set – is simpler still. The answer to both queries is "no." The Court has not yet issued an initial scheduling order in this case; court-ordered discovery has only recently begun but a trial date has not been set.

Finally, the Court believes that judicial economy and fairness to all parties augurs in favor of a stay. The time invested in the proceedings before the PTO likely will pay dividends in the ultimate resolution of the present action.

IV.

The Court finds that it has the inherent authority to stay proceedings in the interest of fairness and efficiency. The circumstances of the proceedings before the PTO in this case suggest that the present litigation will be well informed by those proceedings.

Accordingly, it is **ORDERED** that the defendants' motion to stay all proceedings in this Court [dkt # 9] is **GRANTED**. All proceedings in this case are **STAYED** until **December 1, 2008** or until further order of the Court. On or before that date, the parties shall file a joint report with the Court outlining the activity that has taken place before the PTO and other tribunals concerning the *inter partes* examination and provide an estimate as to the likely completion date. Either party may seek relief from the stay by appropriate motion.

It is further **ORDERED** that the defendants' emergency motion to stay the magistrate judge's discovery order [dkt #31] is **DENIED** as moot.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: June 17, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 17, 2008.

s/Felicia M. Moses
FELICIA M. MOSES